IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) DAKOTA VAUGHN,<br>    Plaintiff, | )<br>)<br>) Case No. 6:17-cv-86-RAW<br>) JURY TRIAL DEMANDED |
| (1) ARKANSAS EGG COMPANY, INC.,<br>    an Arkansas corporation; and<br>(2) VITAL FARMS, INC., a Delaware<br>    corporation;<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) |

## THIRD AMENDED COMPLAINT

Come now the Plaintiff, Dakota Vaughn, by and through his attorney, William R. Mayo, OBA# 11055 and for his Third Amended Complaint herein for his cause of action against the Defendants, Arkansas Egg Company, Inc., and Vital Farms, Inc. demanding a trial by jury of all issues so triable states and avers as follows:

Jurisdiction and Venue

1. This Court has continuing jurisdiction over the subject matter and the parties from its initial removal from state court due to the complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $ 75,000.00, exclusive of interest and cost in accordance with 28 U.S.C. Section 1332 (a).

2. Further the Plaintiff is a citizen of Oklahoma and of this Federal District. See 28 U.S. C. Section 1332 (c) (1).

3. Venue is properly vested with this Court, the subject matter of the contractual agreements, actions and performance of the parties contracted to conducted in Adair County, Oklahoma within this Federal District.

The Parties

4. Plaintiff, Dakota Vaughn is a citizen and resident of Adair County, Oklahoma residing at Rt. 1, Box 493, Westville, Oklahoma 74965 within this Federal District.

5. The Defendant, Arkansas Egg Company, Inc., is an Arkansas corporation doing business in the State of Oklahoma through its merged entity, Heartland Eggs, LLC although the records of the Oklahoma Secretary of State do not reflect that either had been formerly domesticated within this State. Michael A. Cox, Jr. is its registered agent for service of process at 24185 Mill Road, Summers, Arkansas 72769.

6. The Defendant Vital Farms, Inc. is a Delaware corporation doing business in the State of Oklahoma although records of the Oklahoma Secretary of State do not reflect that it has been formerly domesticated within this State. It is headquartered at 3913 Todd Lane, Suite 505, Austin, Texas 78744 and The Corporation Service Company of 2711 Centerville Rd., Suite 400, Wilmington, Delaware 19808 is its registered agent for service of process.

Factual Allegations Common to Plaintiff's Claim

7. On October 25, 2013, the Plaintiff entered into a contract titled "Pastured Raised Egg New Construction Contract Producer Agreement" with Heartland Eggs, LLC d/b/a Heartland Egg Company, LLC of which, Michael A. Cox, Jr. was its managing member and presumed owner. Heartland Eggs, LLC on November 25, 2014 merged with Defendant, Arkansas Egg Company, Inc. according to records of the Arkansas Secretary of State.

8. Heartland Egg Company, LLC was not a registered fictitious name certified for use by Heartland Eggs, LLC, an Arkansas Limited Liability Company but in reality this entity was one and the same before its merger with Defendant Arkansas Egg Company, Inc.

9. The purpose of the contract was for the Plaintiff as a Producer to care for flocks of laying hens then owned by Heartland Eggs, LLC under stated conditions and considerations to be paid by Heartland Eggs, LLC to the Plaintiff. A copy of the contract is attached hereto marked Exhibit 1 and incorporated herein by reference.

10. Under the terms of the contract the Plaintiff as Producer was to be compensated for the care of the chickens as specified in in the contract on a "per dozen" service rate for all nest run eggs picked up by Heartland Eggs, LLC as Owner at the Plaintiff's farm located in Adair County, Oklahoma for 3 flocks at the rate of Eighty-five cents ($ 0.85) per dozen on eggs delivered after the pullet lay.

11. Based upon the representations of Heartland Eggs, LLC (d/b/a Heartland Egg Company, LLC) made by its managing member, Michael A. Cox, Jr. cash flow projections under the contract terms, the Plaintiff borrowed from the Farm Services Agency funds in the sum of $ 304,000.00 for the construction of two laying houses, equipment and land in Adair County, Oklahoma in order to fulfill the terms under the contract.

12. After construction of the chicken houses and installation of the equipment infrastructure, Plaintiff received chickens as agreed under the contract on March 28, 2014.

13. Shortly thereafter and within the summer of 2014 Heartland Eggs, LLC began failing to timely pay the Plaintiff the consideration agreed under the terms of the contract as contained therein for the care of the flocks.

14. Michael A. Cox, Jr. on behalf of Heartland Eggs, LLC approached the Plaintiff during the time period of September 2014 falsely represented to him that Heartland Eggs, LLC was being acquired by the Defendant, Vital Farms, LLC and inquiring if he would consent to an assignment of the contract contained in Exhibit 1 to the Defendant Vital Farms, Inc.

15. In subsequent conversations during October of 2014 Michael A. Cox, Jr. as managing member of Heartland Eggs, LLC further falsely represented that upon Plaintiff constructing 6 additional chicken houses that Vital Farms, LLC would update the existing contract (Exhibit 1) for 5 flocks as detailed in paragraph 18 below.

16. As an incentive to obtain the Plaintiff's consent to the contract assignment, Michael A. Cox, Jr. on behalf of Heartland Eggs, LLC also falsely represented to the Plaintiff during these conversations that Vital Farms, Inc. would extend additional contracts to expand his operation based upon Plaintiff's construction of 6 additional 50' feet x 130 feet chicken houses for 5 flock contracts based on 5 flocks at the rate of sixty-five cents ($ 0.65) per dozen on eggs delivered after the pullet lay.  Further, the existing contract (Exhibit1) proposed to be assigned to Defendant Vital Farms, Inc. would be extended to a 5-flock contract at the rate of eighty-five cents ($0.85) per dozen on eggs delivered after the pullet lay.

17. During these conversations Michael A. Cox, Jr. represented that he had the apparent authority on behalf of Vital Farms, Inc. to make these representations on its behalf.

18. These promises and inducements were repeated and confirmed by Russell Diez-Canseco on behalf of the Defendant Vital Farms, Inc. to the Plaintiff and to his lender, Live Oak Bank.

19. Subsequently during a meeting between Michael A. Cox, Jr., the Plaintiff and his loan officer Vance Keaton of Live Oak Bank that took place at the office of the Defendant, Arkansas Egg Company, Inc. in late October or early November of 2014 the earlier promises and inducements were repeated upon which the projected income source from the new contract and replacement contracts was to be the basis upon which Plaintiff was to obtain his loan commitment from Live Oak Bank.

20. Plaintiff relying upon these representations applied for financing with Live Oak Bank for the sum of $ 1,336,000.00 to expand his operations for the construction of 6 additional chicken houses upon the specifications and required infrastructure dictated by the Defendant, Vital Farms, Inc.

21. The Michael A. Cox, Jr. and Russell Diez-Canseco on behalf of Defendant Heartland Eggs, LLC and Defendant Vital Farms, Inc. respectively represented to Plaintiff and Plaintiff's banker of Live Oak Bank that upon the assignment of the existing contract (Exhibit 1) new contracts would be issued to upon terms set forth in paragraphs 15 and 16 above including a replacement contract for the Exhibit 1 contract.

22. On November 5, 2014 Michael A. Cox, Jr. and Russell Diez-Canseco met with the Plaintiff and his spouse at his home regarding the promised new contracts and the

assignment of the then existing contract with Heartland Egg, LLC to Vital Farms, Inc. wherein once again the promises and representations formerly made were repeated before the Plaintiff executed the assignment of the contract at that time.

22. Based upon the false representations of Michael A. Cox, Jr. and Russell Diez-Conseco on behalf of the Heartland Eggs, LLC and Vital Farms, Inc., respectively Plaintiff consented to the assignment of the Heartland Eggs, LLC contract (Exhibit 1) executing an assignment agreement with an effective date of November 5, 2014 and Plaintiff proceeded with the financing of the additional 6 chicken houses obligating himself to financing of $ 1,336,00000 on a Small Business Administration guaranteed loan with Live Oak Bank for the construction of the additional 6 chicken houses and infrastructure. A copy of the assignment agreement is attached hereto, marked Exhibit 2 and incorporated herein by reference.

23. Under the terms of the assignment agreement (Exhibit 2), Heartland Eggs, LLC, was not relieved of its obligations to the Plaintiff under the terms of the assignment and as a matter of law remained as a surety, insurer and guarantor of its obligations under the contract.

24. Unknown to the Plaintiff at the time, Michael A. Cox, Jr. as principal for both Heartland Eggs, LLC and the Defendant Arkansas Egg Company, Inc. merged the two entities into Arkansas Egg Company, Inc. according to the records of the Arkansas Secretary of State reflecting the Articles of Merger being filed November 25, 2014 contrary to his earlier representations to the Plaintiff.

25. It is the Plaintiff's informed belief based upon the earlier representations of Michael A. Cox, Jr. then ratified by the representations of Russell Diez-Canseco on behalf of Vital Farms, Inc. that Cox had the apparent authority to act on behalf of Vital Farms, Inc. and that at least to the time this litigation ensued that Michael A. Cox, Jr. was in the employ of Vital Farms, Inc. in some manner not yet discovered.

26. As a matter of law under Arkansas and Oklahoma law, as a result of the merger, Defendant Arkansas Egg Company, Inc. assumed all of the liabilities and obligations including contractual and tort liability of Heartland Eggs, LLC as the merged entity and remains as a surety, insurer and guarantor under the assignment of the contract of Heartland Eggs, LLC (Exhibit 1) to Defendant Vital Farms, Inc.

27. The Plaintiff's loan for the additional construction of the 6 chicken houses was approved and closed on February 15, 2015 for $ 1,336,000.00 and construction commenced of the 6 additional chicken houses constructed to the specifications supplied by Defendant Vital Farms, Inc.

28. The additional chicken houses were constructed to accommodate the niche market of the Defendant Vital Farms, Inc. for the production of pasture raised chickens producing organic eggs, and are not conducive for use in the general poultry producing market.

29. Plaintiff relied upon the representations made by Michael A. Cox, Jr. and Russell Diez-Canseco on behalf Heartland Eggs, LLC, predecessor of Defendant Arkansas Egg Company, Inc. and Vital Farms, Inc. respectively and obligated himself to his detriment upon the promises of said Defendants as to the cash flow projections to be

7

generated from the modification to the assigned contract as well as to the contracts for the additional houses upon which the debt service of his loan was to be based.

30.  Plaintiff received new flocks of chickens from Defendant Vital Farms, Inc., however the existing assigned contract on the original two chicken houses were not modified as promised and contracts on the additional 6 newly constructed chicken houses were not presented to the Plaintiff until after construction was completed and flocks placed in Plaintiff's houses.

31. In June of 2015 after Plaintiff received flocks from Defendant Vital Farms, Inc., Russell Diez-Conseco on behalf of Defendant, Vital Farms, Inc. presented new contracts for the Plaintiff's additional 6 newly constructed chicken houses however their terms did not comport with the terms promised as outline in paragraphs 15 and 16 above.

32. When confronted by the Plaintiff regarding the discrepancy in the terms of the contracts and lack of updated assigned contract Russell Diez-Conseco replied that if Plaintiff did not have his promises in writing there was nothing he could do.

33.  Plaintiff having already accepted the flocks and committed himself to the additional financing executed three contracts with the Defendant Vital Farms, Inc. on June 29, 2015 for the third, fourth, fifth and sixth and seventh and eighth newly constructed chicken houses.  Copies of the contracts are attached hereto respectively marked as Exhibits 3, 4, 5 and 6 and incorporated herein by reference.

34.  On July 20, 2016 Plaintiff accepted a new flock of chickens from the Defendant Vital Farms, Inc. under the assigned contract (Exhibit 1).

35. In September of 2016 Plaintiff was informed by representatives of the Defendant Vital Farms, Inc. that it would be removing the chickens from the original two chicken houses and that he would be compensated for "pullet pay" of $ .07 per chicken for 12 weeks the flock had been in his care contrary to the terms of the contract (Exhibit 1).

36. Plaintiff learned that Defendant Vital Farms, Inc. had taken similar actions in removing flocks from other contract Producers in the area.

37. Concurrently Michael A. Cox, Jr. aware of the actions taken by Defendant, Vital Farms, Inc. against the Plaintiff on September 22, 2016 initiated a civil suit as Plaintiff against the Defendant Arkansas Egg Company, Inc. in which he is a principal in the Circuit Court of Washington County, Arkansas in case styled <u>Cox vs. Arkansas Egg Company, Inc.,</u> Case No. CV 2016-1996-1 seeking judgment against his own company for sums allegedly owed for $ 2,456874.39 plus prejudgment interest, costs and attorney's fees.

38. Michael A. Cox, Jr. as principal of the Defendant, Arkansas Egg Company, Inc., initiated the lawsuit as a sham in an attempt to create the appearance of insolvency of the Defendant Arkansas Egg Company, Inc. to insulate and dissuade contract producers that include the Plaintiff from seeking redress against his company that remains as a surety for contract assigned by Heartland Eggs, LLC (now merged with Defendant Arkansas Egg Company, Inc.) to Defendant Vital Farms, Inc.

39. On October 12, 2016 Defendant, Vital Farms, Inc. removed the flocks from Plaintiff's care and possession without Plaintiff's consent.

40. The lawsuit was voluntarily dismissed by Michael A. Cox, Jr. on November 14, 2016 after perceiving the initial risk of exposure for Arkansas Egg Company, Inc. for liability for the assigned producer contracts had passed.

41. On December 15, 2016 Defendant, Vital Farms, Inc. delivered new flocks of chickens placed in the Plaintiff's original 2 chicken houses under the assigned contract (Exhibit 1).

42. On the afternoon of January 24, 2017 without prior notice or explanation Defendant Vita Farms, Inc. removed the flock placed in the original first chicken house under the assigned contract (Exhibit 1) from the Plaintiff and without his consent.

43. Although at this writing no additional flocks have been removed from the Plaintiff's farm, he has received conflicting communications from representatives of Defendant Vital Farms, Inc. of their intention to remove additional flocks as it has done from other area farmers.

44. Further, under the contracts Defendant Vital Farms, Inc. is obligated to provide at its expense feed for the flocks under the Plaintiff's care however over the last 4 months it failed to provide feed to Plaintiff's chicken houses that are the subject of the contracts attached as Exhibits 3, 4 and 8 on 4 separate occasions directly affecting the flocks' productivity.

45. Additionally, Defendant Vital Farms, Inc. has caused to be delivered inferior feed to Plaintiff's chicken houses that are the subject of the contracts attached as Exhibits 5 and 6 likewise directly and negatively affecting the flocks' productivity.

46. The acts, representations and conduct of Michael A. Cox, Jr., and Russell Diez-Conseco as alleged herein were in the course of their positions with their respective entities and are a part and parcel of their overall conspiracy to accomplish the following contrary to the corporate Defendants' covenants under the contracts to conduct themselves in good faith and fair dealing with the Plaintiff:

A) Defendant Vital Farms, Inc. had over extended its growth flooding their own niche pasture raised, organic egg market and to cut costs sought to force integrated growers such as the Plaintiff from their contracts;
B) Defendant Vital Farms, Inc., sought to eliminate integrator contract growers such as the Plaintiff to increase their profit margin by replacing them with buy-sell contract growers who would be required to purchase their own feed and assume the risk that it has under integrator contracts as with the Plaintiff;
C) Defendant Vital Farms, Inc. seeks the elimination of Arkansas/Oklahoma producers to accommodate its expansion into Missouri to cutting the cost of egg delivery to its new egg processing plant being constructed in Springfield, Missouri.
D) Falsely increased the Defendant Vital Farms, Inc.'s taxable expense by issuing to the Plaintiff and other growers fraudulent IRS 1099-MISC with the use of the U.S. Postal Service mails inflating the reporting of sums paid to growers, in the case of the Plaintiff the sum of $ 85,592.09.

47. The Plaintiff had a legitimate and reasonable expectation that Defendant Vital Farms, Inc. through its officers, employees and agents would not interfere with his income source in order for him to timely service his debt incurred in order to fulfill his obligations under the contracts.

Plaintiff's Cause of Action
Breach of the Implied Covenant of Good Faith and Fair Dealing
Breach of Contract

48. Plaintiff restates and realleges the allegations contained in Paragraphs 1 through 47 above against the Defendants, Arkansas Egg Company, Inc. and Vital Farms, Inc.

49. Pursuant to Oklahoma law as it applies to the contracts that are the subject of the Petition filed herein, the parties' contracts contain an implied covenant of good faith and fair dealing between them.

50. With respect to the contract originally entered between Heartland Eggs, LLC and later assigned to Defendant Vital Farms, LLC (Exhibit 1) required the payment to the Plaintiff as Producer the sum of $ .85 per dozen for eggs produced.

51. Heartland Eggs, LLC before the assignment and the later merger with Defendant Arkansas Egg Company, LLC and the Defendant, Vital Farms, Inc. failed to pay the $ .85 per dozen for eggs produced under the contract (Exhibit 1).

52. Further the conduct of Vital Farms, LLC in interrupting the Plaintiff's care of the flocks received under the assigned contract constitute a breach of the implied covenant of good faith and fair dealing resulting in damages to the Plaintiff as a direct and proximate cause arising from the breach.

53. Defendant Arkansas Egg Company, Inc. continues to serve as a surety, insurer and guarantor of the assigned contract in light of the merger of Heartland Eggs, LLC with it and is jointly and severally liable with the Defendant Vital Farms, Inc. for its breach of contract.

54. Defendant Arkansas Egg Company, Inc. owes the Plaintiff the sum of $ 12,233.25 for the unpaid consideration for eggs produce under the assigned contract (Exhibit 1) for which he is entitled to Judgment.

55. Further, the Plaintiff has been damaged as a direct and proximate result of the Defendant, Vital Farms, Inc's, breach of removal of flocks from the Plaintiff's farm in the loss of egg revenue in the sum of $ 26, 624.15 at the time of filing suit with such

damages continuing and diminution of revenue resulting in the decline of productivity resulting in the Defendant's failure to deliver feed and the delivery of inferior feed that continues to accrue.

56. Additionally, Plaintiff has been damaged as a direct and proximate result of the Defendant Vital Farms, Inc.'s breach requiring additional cost to the Plaintiff before the egg pay for the care of the pullets and house clean-outs in the approximate sum of $ 20,000.00.

57. Defendant Arkansas Egg Company, Inc. as successor in interest to Heartland Eggs, LLC as assignor under the contract (Exhibit 1) as surety, insurer and guarantor of the Defendant Vital Farms, Inc. is jointly and severally liable for such damages.

58. The Plaintiff demands trial by jury.

WHEREFORE, Plaintiffs, Dakota Vaughn prays judgment be awarded over and against the Defendants as follows:

A) Against Defendant, Arkansas Egg Company, Inc. on his Cause of Action for breach of contract in the sum of $ 12,233.25 for the unpaid consideration for eggs produce under the assigned contract (Exhibit 1) prior to its assignment to Vital Farms, Inc.;

B) Over and against Defendants Arkansas Egg Company, Inc. and Vital Farms, Inc., jointly and severally in the sum of in the sum of $ 26,624.15 for breach of contract (Exhibit 1) for removal of flocks from the Plaintiff's farm in the loss of egg revenue in the sum of $ 26,624.15 at the time of filing suit with such damages continuing to be determined at trial. Defendant Arkansas Egg Company, Inc. as successor in interest to Heartland Eggs, LLC as assignor under the contract

(Exhibit 1) as surety, insurer and guarantor of the Defendant Vital Farms, Inc. is jointly and severally liable for such damages;

C) Over and against Defendants Arkansas Egg Company, Inc. and Vital Farms, Inc., jointly and severally for breach of contract for requiring additional cost to the Plaintiff before the egg pay for the care of the pullets and house clean-outs in the approximate sum of $ 20,000.00. Defendant Arkansas Egg Company, Inc. as successor in interest to Heartland Eggs, LLC as assignor under the contract (Exhibit 1) as surety, insurer and guarantor of the Defendant Vital Farms, Inc. is jointly and severally liable for such damages;

D) Against Vital Farms, Inc. for breach of contract (Exhibits 3, 4, 5, 6 and 8) for diminution of revenue resulting in the decline of productivity resulting in the Defendant's failure to deliver feed and the delivery of inferior feed that continues to accrue said damages continue to accrue in a sum to be determined at trial.

E) Such damages sought exceed the sum of $ 75,000.00.

F) For all other relief for which he may prove himself entitled including prejudgment interest, costs and attorneys fee.

Respectfully submitted this 7th day of June, 2017.

DAKOTA VAUGHN, PLAINTIFF

BY: /s/ William R. Mayo_____
WILLIAM R. MAYO, OBA # 11055
609 S.W. 8th St., Ste 600
Bentonville, AR  72712
Tel. 479.802.0220/Fax 479.286.1101
wmayo@MayoLawOffices.com

VERIFICATION

I, DAKOTA VAUGHN, verify that I have read the foregoing and the statements contained therein are true and correct to the best of my knowledge this 7th day of June, 2017.

/s/ Dakota Vaughn*
Dakota Vaughn, Plaintiff

*I certify that I have the signed original of this document, which is available for inspection at any time by the Court or a party to this action.

/s/ William R. Mayo*
William R. Mayo, Plaintiff's Counsel

CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of June, 2017, a true and correct copy of the foregoing was served electronically via the Court's ECF system on the following:

| | |
|---|---|
| Clayton E. Bailey | cbailey@baileybrauer.com |
| R. Thompson Cooper | tom@pclaw.org, federal@pclaw.org, joann@claw.org |
| Vicki Bronson | vbronson@cwlaw.com |

/s/ William R. Mayo
WILLIAM R. MAYO